Case No. 21-1042, et al. Village of Morrisville, VT Petitioner v. Federal Energy Regulatory Commission Mr. Nolan for the Petitioner, Mr. Christensen for the Respondent, Ms. Murphy for the Interviewer. Mr. Nolan? Good morning. Good morning, Your Honor. May it please the Court, Paul Nolan, Co-Counsel Carolyn Elephant for Petitioner, Village of Morrisville, VT. First, I'll address the standing issue. The issue of certification waiver is so intertwined with the relicensing of Morrisville's project that it ultimately will determine whether a license is issued at all. And if issued, it will determine what terms and conditions are included in that license, all of which affects the interests of Morrisville in continuing to operate this project with the benefit of spray payers and to provide renewable power to them at low cost. If there aren't any questions, I'll proceed. Okay. I'm going to make three points. First point is that there was a functional agreement. In fact, I would argue there are expressed agreements. The second point is that FERC's interpretation of the statute is in error. It misinterprets Section 401. And third, that waiver cannot be excused by the conduct of an applicant. The best argument or the best example of a functional agreement is actually provided by Intervenor Vermont in their brief at 7 and 8, page 7 and 8. And throughout all the briefs, we talk about a littoral habitat study. That littoral habitat study was commenced by Vermont in 2014. It was finished in August of 2015. It was transmitted to Morrisville for their consideration and for further discussions on August 14, 2015. On August 27, 2015, Morrisville wrote to Vermont in an email and said, it's over a 100-page report, a lot of data. We need more time to review this. Would you agree to an extension of time? This is the second one I call circumvention. Vermont wrote back on September 8, 19, 2015, said, we'll give you a little bit of an extension of time, but you have to file something right away. In fact, you have to file it by September 9, 2015. Morning of September 9, 2015, Vermont emailed Morrisville to remind them that in order to have this deal done, they had to submit a second letter withdrawing and resubmitting what is referred to by Morrisville as a renewed application, not a new application, a renewed application. This is the second time they've done it. They filed that letter. I went to too much explanation in the briefs about the timing when things were done. It was accepted that same day by a separate letter from Vermont. And then Vermont turned around and took their letter and sent it to FERC to give FERC notice that there had been a withdrawing and resubmit of the previous renewed application, the one submitted on November 11, 2014. That's an agreement. They asked us to do something. We did it. And then they actually usurped our role as a licensed applicant and went ahead and told FERC that there was no need to do anything. We're taking care of it. In fact, I'll go on to the next issue. I believe that FERC... FERC didn't really characterize things that way in their decision, did they? No, they did not, Your Honor. They basically said there's no functional agreement. There's no substantial evidence. We're just going to go ahead and deny you your petition for a declaratory order. And what we review isn't whether, you know, FERC could have reasonably agreed with your view of the evidence. What we are reviewing is whether there was substantial evidence for FERC's findings or conclusion with respect to the facts, right? Correct, Your Honor. And I'm not disputing that. I'm saying that I believe that their interpretation of the record was that they picked and choose, ignored evidence that was favorable to our position, and came up with what they wanted to do. And they obviously had KEI and a few other cases going at the same time. But they did that in the face that there was an agreement, actually two agreements, to circumvent the one-year rule. I may go on. Section 401 is clear. Can I just ask, can you, in this case, seems very different from HOOPA Valley. Yes. I'll explain the major difference. After HOOPA Valley, any certifying agency would have to be just impaired to enter into an express agreement. No one's doing express. What's wrong with... And I mean a written agreement, Your Honor. My apology. What's wrong with a state certifying agency in an ordinary case saying they get the application, they're not sure what to do with it. They say we need more information. That seems fine. You could call it asking for more information. You could call it denial without prejudice. Just doesn't seem like there's anything wrong with that. And on the other side of the transaction, what's wrong with an applicant in that situation? You know, he has one of two choices, can forge ahead and force a decision within a year by the agency and then appeal that if it's unfavorable, or the applicant can try to work with the agency and say, okay, I understand your concerns. I'm going to withdraw. I'm going to try again. It doesn't seem manipulative or improper or to frustrate the federal licensing scheme. I would start by...  under all those scenarios. And in our own particular case, I think it was good faith. We have a village manager, not necessarily a retired village manager. Maybe not that sophisticated in the duality of having a FERC license going on where you basically then hand the ball off to the Vermont agency and say, you get to dribble with it for a time. But this is important, I think. I try to make this an issue. When an agency decides that it doesn't have sufficient... First of all, we know now that the clock starts to tick when they receive the application. That application is so deficient that they can't do anything with it. They should deny it with or without prejudice. If the application is okay, we can process it, but we need more information. But they can't get it in time. They should take action as required by the statute, act on the application, and deny it with or without prejudice. This lets everyone know, particularly the federal agency, FERC, what is going on. If I, as an applicant, say, I don't know what the hell is going on. This is not good for my project. And I withdraw the application. Okay, I've stopped the one-year clock. I'll concede that point to you. But then the question happens, what's FERC going to do? Each time in your scenario, FERC has to do something. Now, I'm not going to criticize FERC. I do that as a regular course of business. But either they're asleep at the switch, or they're just negligent. Because they really should have said, in your case, this application has been denied with prejudice. FERC says, what happened? It was inadequate. Are you going to fix it? No, we're not going to fix it. All right, your license application is dismissed. We're done. Are you going to fix it? Yes, we're going to fix it. Here's what we're going to do. All right, we will permit you to resubmit a, and I don't want to characterize it, whether a new or revised, but it would be, in my mind, a new application with the information provided at the agent. And that's why the regs are so interesting now under the EPA, the 2023 regs. Because those regs say, when you dismiss something, when you deny something with or without prejudice, tell the applicant why, and they know what to fix. If I came in, as I just reiterated, if I came in and just withdrew my application because I didn't think it was, you know, I wasn't going to get what I wanted, and I think that's the best way to negotiate with you, then FERC has a huge prudgent. They can say, quit fooling around, or we're going to dismiss that application. You dismiss my application just as Morrisville's future use of its project is in jeopardy. I have a huge investment at risk. I'm getting a little tongue-tied. I apologize. I have a huge investment at risk. If I don't get a new license to continue to operate that project, FERC's going to tell me, surrender your license, and they may, and certainly our friends from American Whitewater here, they're going to say, and maybe you should also decommission the project by removing the dam. So we have a lot at risk here, and we're not playing games. We went and got an agreement for the first extension of time. We got an agreement for the second extension. Both those agreements circumvented the one-year rule. So let me briefly go into this whole malarkey about that I can act unilaterally for my own benefit. No, you can't. That can't be done. If I did that as I argued earlier, then FERC would be on me for not processing in good faith my application. No one can act unilaterally. I would ask, we don't act unilaterally, and the agency didn't act unilaterally. We acted collaboratively to do this study, a study that started in 2014, went to 2015, and necessitated the second reset. I'm out of oyster and everything here. There are no other questions. We'll give you a little bit of time on rebuttal. Let's hear from Matthew Christensen on behalf. Thank you, Your Honor. Matthew Christensen for Respondent, Federal Energy Regulatory Commission. May it please the Court. I'd like to start with Judge Katz. This is hypothetical, which I don't actually think is a hypothetical here. Here the applicant had the opportunity to proceed with its application to allow the state the full year to act that the Clean Water Act provides, and the communications that the applicant listed in the record indicate that the applicant believed that the state would act within the one-year period, but that the state would grant the application with terms that the applicant disliked. So instead of proceeding with the application, giving the state the full year to act, the applicant, both in 2014 and in 2015, withdrew and resubmitted its application, so it had more time to negotiate with the state. In 2014, I believe the internal communications in Morrisville's own internal communications indicated that they believed the state would issue the application, but that the application would contain those conditions, the conditions along the lines that the state proposed in 2013, and that the applicant thought would be burdensome or would somehow prevent it from sort of meaningfully implementing the license. In 2015, when they withdrew and resubmitted for the second time, they said they needed additional time to consider the record. They needed to consider potential use of microturbines. They needed to consider, I believe, the flows, and then they also needed to conduct what they described as a cost-benefit analysis. If I could direct you to JA24 and 25, this is the commission's rehearing order, paragraphs 14 to 17. The commission considered all of this evidence and concluded that both times the withdrawals and resubmittals were not done as part of the type of coordinated scheme, to use this court's language in HOOPA, to delay the issuance of the 401, but rather so for the benefit of the applicant, Morrisville. I think that the evidence that the commission listed at those paragraphs, again, 14 to 17 of the rehearing order, provides substantial evidence to Judge Wilkins' question, and that's the question before the court, not whether Morrisville is correct in arguing their view of the facts, but rather whether the record in this proceeding provides substantial evidence in support of the commission's, and I would submit that those four paragraphs at JA24 and 25 do exactly that. Was the language in HOOPA part of the holding, or is that just really dictum as far as there needing to be some sort of agreement or working together? So I think HOOPA was, as the Fourth Circuit described it, a narrow holding based on a fairly egregious set of facts. I think HOOPA pointed to a number of things that I think were concerning to the court, but the way in which the court resolved HOOPA, as I read it, was based on that, the presence of that agreement. And so the court said there are a number of, in fact, the court specifically said there are a number of questions we don't need to resolve, but an agreement that obligates a state not to act is evidence that the state failed or refused to act over the course of more than one year, which is sufficient for a finding of waiver under 401. So I think the direct answer to your question is I think it was essential to the holding, but it doesn't say in arts candor it's the only way a state could have failed or refused to act. Suppose the state says this is a very complicated application. We're not going to be able to act on it within a year. What we do in those circumstances is just, if it's really complicated, is just deny it. If you don't want that to happen, withdraw it and resubmit it. And that's what the applicant does. They're not really agreeing to anything there. They basically kind of have a gun to their head. They don't want a denial, so they withdraw it and resubmit it. Does that trigger this provision? Does that violate the rule in HOOPA? Well, that's obviously not this case, but I do not think that would violate the rule in HOOPA, no, because I think that's a circumstance where the state is prepared to act, and they say the act you will get is essentially a denial, a denial without prejudice, which this court's opinion in Turlock, I think, says does not cause waiver. And at that point, the applicant has a choice. The applicant can proceed and get the denial without prejudice, which is what the state indicates would follow, or the applicant can instead deny or withdraw and resubmit, thereby restarting the one-year clock. And I think if you look at the statute, the emphasis in the statute is on the state failing or refusing to act within the one-year period following an application. And I think in the hypothetical that you presented, there's no failure on the part of the state to act. They're quite ready to act, but then the choice is on the applicant whether they want to move ahead and receive that decision from the state or instead withdraw and resubmit and thereby restart the one-year clock. What's the – HOOPA talks about frustrating the purpose of the regulatory scheme, and if the state and the applicant are in cahoots to do a seriatim withdrawal and resubmission, somehow that frustrates FERC. I'm just having a hard time understanding that. What's your understanding? I mean, my sort of gut reaction to that is the scheme is set up so that you need three parties to agree for a license to be granted. You want the operator to want to pursue it. You need the state to certify it, and you need FERC to certify it, and any one of them, if any one of them says no, that's not frustrating the scheme. That's the scheme operating. Yeah, I agree. I'm just having a hard time getting my hands around the rationale of HOOPA, and I guess the best I can come up with – I mean, tell me if you agree or not – is that when you have a scheme like that, the one-year licenses with the old conditions just keep getting renewed and somebody, an environmental group or a tribe or whoever, wants updated conditions. Is that what is driving this? Is that the concern that's driving this? I think that could be part of the concern. I think, to your point, Section 401 specifically contemplates that the licensing proceeding might not move forward at all if the state doesn't grant the certification. I think what I understood to animate the court in HOOPA was – Sorry, go ahead. I mean, if that becomes a real problem, don't you have a trump, which is you can threaten not to give the one-year renewal? You can say this is getting ridiculous. We need 2025 conditions instead of 1975 conditions. Get your act together or we won't give you the one-year renewal. I think that's potentially possible. To my knowledge, the commission has never issued a threat like that. But if I can just go back to your question about what was animating HOOPA, I think it was the fact that 401 and the one-year time limit existed. According to the legislative history, that was put in place to prevent sheer inactivity on the part of the state. So I think you have this three-part licensing, this three-actor licensing proceeding. I think the idea of having that multi-part proceeding or that multi-participant proceeding, I'll call it, is that they'll all move forward in good faith, and that's why you can have this scheme. And if at some point two of the three in that case basically said, no, we're not going to move this forward, at that point you are frustrating the proceeding. And I think that's why HOOPA says it is the failure to act. I believe it was deliberate and contractual idleness on the part of the state, and that seems inconsistent with the spirit of 401 and with the legislative history that says the one-year limitation is put in place to prevent sheer inactivity on the part of the state, which is exactly what we saw in that case. How does a party like the party on the other side get out of a box of the sort that they found themselves in? What do they do? What should their strategy be? And just so I can understand your hypothetical, Judge, the box is that they disagree with the conditions. They want to end up with a waiver because the state's not moving. Well, respectfully, Your Honor, I think the state was prepared to move. Both withdrawals and resubmittals took place, I think, roughly 10 months after the applications were submitted, and both times the record of the proceeding suggested that Morrisville itself believed the state would proceed with issuing the water quality certification just with conditions that it didn't like. So if that was the box, then I think the thing to do would be to proceed, get the water quality certification, and then litigate any conditions they objected to in state court, which is exactly what happened here, where Morrisville appealed Vermont's certification. I mean, that's the answer, which I hadn't remembered the answer, at least for me, and it was challenging the state court. That's their answer.  And I think they vigorously pursued it all the way to the state Supreme Court, if I recall, which largely affirmed the conditions that Vermont eventually issued. No further questions? We'll hear from Intervena. Thank you. Ms. Murphy, good morning. Good morning, and may it please the court. Laura Murphy for the Vermont Agency of Natural Resources, Intervena in this case. So I have three short points on standing. First, it is a foundational principle of standing that the injury must flow from the conduct complained of. In this case, the conduct complained of is that A&R, the agency of natural resources did not issue Morrisville certification within one year of Morrisville's original request. This is the purported failure to act. That is the basis of Morrisville's petition, but Morrisville does not claim any injury flowing from this alleged in action. And in fact, explicitly disclaims it and its reply brief at page six quote, the injury to Morrisville is caused by the FERC orders on review, not to any delay by Vermont. There are similar statements on page 24 of Morrisville's reply. And this morning council also said that it's standing flows from the terms and conditions of the certificate, not from any alleged inaction on the part of Vermont. Second, there is no addressability. There is nothing for the court to fix. There is no inaction that needs to be stopped. A&R issued the certification almost eight years ago, more than four years before Morrisville ever sought waiver. And this is different from Hoopa Valley, where this court noted that it would not be futile to issue a waiver order because it would allow Hoopa, which was the petitioner in that case where the application was still pending to come back to the table at FERC. What does it matter that it didn't seek waiver until long after the actions of A&R? I mean, their complaint, their, their response to your lack of standing argument is that, look, if FERC simply would just find that Vermont waived its right to have a say in the certification, then we wouldn't have to be subject to the conditions that the state insisted upon, right? Isn't that their argument? That's exactly their argument. And that the injury there flows from the conditions and the certification, the remedy for that injury is to go to state court, litigate the conditions, which is exactly what happened here, but they have no injury from. The remedy is to say that, that. I mean, what's the whole point of 401? 401 has to have some legal effect. So, so the, the, the, the point of 401 writ large is to allow states to protect water quality. The point of the waiver provision is to prevent inaction on the part of the state. Yes, but it has an impact when it's invoked by her, right? And the impact is then to set aside. And the attempt by the state or. The need. Permit requirements by the state, right? Not necessarily. So that could be an outcome. So if, if. A state has not acted on a pending application, which is not what happened here because the application was withdrawn. If the state has not done that and a year passes, my understanding is that FERC. You know, in the normal course may go ahead, issue the license and say, dear state, you waived your authority. We're not including your conditions. FERC could include the conditions if it wanted to. I can't recall what happened. So when HOOPA, when the waiver petition was filed, the application, the 401 application was still pending. So there was something. So it wasn't as if, so right now there's no delay. And this really gets to the addressability. There's no delay from any purported state inaction on the certification. There's nothing to fix there. That was, that was different from HOOPA Valley and with respect to the injury. That needs to be present for a waiver petition. This court's case in Weaver's Cove is, is on point because it was very clear that to have standing for waiver under 401. The injury must flow from the alleged state inaction. And the court said the applicant here hasn't claimed any injury from the state inaction. And that's exactly what we have here. And just quickly on the issue of, of Morrisville saying, well, we were agreed by FERC's order, because if, if we have waiver, we don't have to comply with the conditions in hydro investors also from this court and Wilcox from the eighth circuit, those cases were very clear that to come to court, the petitioner needs to have standing for the relief it sought before the agency. So, so that is the relevant standing inquiry. Was there injury from inaction and is any edge alleged inaction redressable? And it's not because there's no inaction to stop. Morrisville should not be allowed to bootstrap its way into court. And more generally applicants should not be able to gain the system in this way. We respectfully ask the court to dismiss for lack of standing. So when would a, an applicant be able to base standing on FERC's improper interpretation of section four? If, excuse me, if, so if there's still a 401 application pending, let's say there's a pending application. The state hasn't done anything, let's say for five years or, or let's just say for one and a half years. And the applicant goes to FERC and says, or even doesn't go to FERC. And it goes to FERC and says, please declare waiver. And FERC says, no, the application is still pending. There's still delay that needs to be fixed. I think it's safe to say the applicant would have standing under those circumstances, but where, as Morrisville has conceded, it's not claiming any injury from delay. There is none. And, and again, coming back to this redressability point, if there's been a certification that's already been issued, there's nothing to fix under the failure to act. So the state takes a year and a day to act on an application and they impose conditions that an applicant doesn't like. And the applicant goes to FERC and says, well, under 401, um, their certification and their conditions are void. So set those aside. Um, you're saying they wouldn't have standing because at that point, FERC can't redress any delay. They wouldn't have article three standing. That's correct. Now, whether they could still decide it, I think is a separate question, but they wouldn't have article three standing to pursue that remedy in court. All right. I understand your position. All right. Thank you. Thank you. All right. Mr. Nolan, I think you're out of time, but we'll give you two minutes. Neither FERC nor Vermont are entitled to deference. EPA speaks. EPA has spoken twice, 2020, 2023, when it implemented regulations that specifically said under section 401, what actions are required, grant, deny, or expressly waive. Morrisville went to Vermont, went to FERC and said, they didn't, Vermont didn't take any of those actions. Therefore, under 401, their certification authority is deemed waived. We can talk about the terms and conditions. Those were litigated at the court, state court as properly. Our issue here and our injury here is that they actually had no authority to do anything. We went to FERC, asked them to declare that FERC refused to do that, came up with, you know, well, that's, you know, even though the statute doesn't say that withdraw and resubmit is not okay. We think it's okay. We think it's okay when it's done for unilateral action and your mutual benefit, whatever that really means in this circumstance. But I want to give you guys one point that you raised is that the FERC now says the reasonable period of time, no matter what, for any application, one kilowatt, a hundred megawatt hydro project is now one year. And therefore they've now said, okay, it's always one year. We don't know until an application is that a 401 application is actually filed with the state, how much will be involved. The bright line that we asked for is that you submit an application. We know it starts. That's the technique of analysis I argue. Then we decide has a year lapsed. And if a year has lapsed and their certification authority is waived under the statute, it hasn't lapsed. And for some reason we withdrew and resubmitted because we thought, you know, we could cut off the one year period as you heard FERC's attorney say, that's not what we're going on in this proceeding. We were told we had to file by September 9. Why did we have to file by September 9, 2015? It's because the state said they needed time to issue the notice, to have the hearing and issue a 401. Thank you. Thank you. We'll take the matter under review.
judges: Wilkins; Katsas; Edwards